Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or to amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in the two Industrial Commission Form 21, Agreements for Compensation, which were approved by the Commission in I.C. No. 081799 on January 16, 1991 and in I.C. No. 239234 on July 16, 1992, in the two Form 26 Supplemental Agreements in I.C. No. 081779 approved on April 1, 1991, and August 29, 1991, in the Form 26 in I.C. No. 239234 approved on April 14, 1993, and in their Pre-Trial Agreement which was filed on April 16, 1996, and at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provision of the North Carolina Workers' Compensation Act at all relevant times.
2. Zurich American Insurance Company was the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. In I.C. No. 081779, the plaintiff sustained an admittedly compensable injury to her back on August 30, 1990, at which time her average weekly wage was $286.00, yielding a compensation rate of $190.67. The plaintiff received temporary total disability compensation pursuant to the Form Agreements for 25 3/7 weeks, and received 15 weeks of permanent partial disability compensation as a result of the five percent permanent impairment rating to her back. The defendants filed a Form 28B on January 17, 1992, reporting that final compensation had been paid in this matter.
5. In I.C. No. 239234, the plaintiff sustained an admittedly compensable injury to her back on May 29, 1992, at which time her average weekly wage was $305.60, yielding a compensation rate of $203.74. The plaintiff received temporary total disability compensation, and received 15 weeks of permanent partial disability compensation as a result of a five percent permanent impairment rating to her back. The defendants filed a Form 28B on July 28, 1993, indicating that the final compensation had been paid.
6. The issue for determination is whether the plaintiff has sustained a change of condition, and if so, to what compensation may she be entitled under the Act.
7. The parties stipulated 81 pages of medical reports and two letters to the plaintiff into evidence at the hearing. Thereafter, the parties agreed to stipulate 110 pages of medical records, together with the Industrial Commission forms from each file.
******************
The Full Commission adopts the findings of fact of the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a fifty-four year old female with an eleventh grade education. The plaintiff had a pre-existing history of seizures.
2. Following the 1990 admittedly compensable injury, the plaintiff was diagnosed with a lumbar strain, for which she was treated conservatively. The plaintiff attempted to return to work on January 3, 1991, but was unable to do so due to back pain.
3. The plaintiff returned to work with the defendants on February 11, 1991, where she continued to work until on or about May 29, 1992, when she experienced a new injury to her back while attempting to empty trash. The plaintiff was diagnosed at that time by Dr. Landon Anderson with a lumbosacral strain superimposed on pre-existing continuing back pain. Plaintiff was restricted to no bending, pulling or bending, and no lifting greater than five pounds.
4. The plaintiff returned to work on June 1, 1992, but was unable to complete her shift due to complaints of back pain. On July 3, 1992, the plaintiff was restricted by Dr. Anderson from constant walking, lifting greater than ten pounds, and bending; she was recommended to return to light duty work.
5. The plaintiff returned to work on July 13, 1992, at the same wages, and she continued to receive therapy. The plaintiff was last employed with the defendant-employer in May of 1993, when the plant in Wilmington closed. She briefly worked in shipping and receiving with Whilland for approximately a week and a half, but was unable to continue due to her inability to lift the packages.
6. On May 6, 1993, the plaintiff was seen by Dr. Sue Nelson of Cape Fear Memorial Hospital Occupational Health Services for complaints of intermittent right hand pain with swelling and numbness. The plaintiff was diagnosed at that time with carpal tunnel syndrome. There is no evidence to suggest that this condition is causally related to the admittedly compensable injuries.
7. On May 12, 1994, the plaintiff was evaluated by Dr. Corazon Ngo for a Disability Determination Evaluation through North Carolina Disability Determination Services. Dr. Ngo diagnosed the plaintiff with a seizure disorder, osteoarthritis and low back pain. In July of 1994, Dr. Joseph Colligan evaluated the plaintiff, at which time she related her inability to work due to arthritis in her arms and ankles. Dr. Colligan found plaintiff to have epilepsy with active seizures, gout, hypertension, and arthritis in the hips, knees, hands, ankles, and toes. There is no evidence to suggest that these conditions are causally related to the two admittedly compensable injuries.
8. On June 7, 1994, the plaintiff sought treatment with Dr. Muradi of Black River Family Practice for depression. She was referred to Southeastern Center for Mental Health for depression, and was diagnosed with dysthymia due to injury and loss of employment.
9. The Industrial Commission received a letter from the plaintiff on June 8, 1994, requesting that her claim be reopened.
10. On June 13, 1994, the plaintiff returned to Dr. Muradi with complaints of back and knee pain, and radiating pain in the left leg.
11. On June 27, 1994, the Commission received a second letter from the plaintiff requesting treatment by Dr. Anderson, and specifically noting the two year statute of limitations on the Form 28B.
12. On September 20, 1994, the plaintiff returned to Dr. Anderson, following which he recommended a series of injections in the SI joint. On December 19, 1994, the carrier approved the injections.
13. During the Spring of 1995, Dr. Anderson recommended a TENS unit for the plaintiff, another series of SI injections, and an MRI. On or about June 23, 1995, the carrier advised Dr. Anderson that no further payment for treatments was authorized. Since that time, the plaintiff has paid for continuing treatment either on her own or through Medicaid.
14. X-rays ordered by Dr. Anderson revealed no changes in plaintiff's back from 1992 to 1995. Dr. Anderson opined that the plaintiff suffered from the same back ailments as those she had from 1990 and 1992. He further found that the plaintiff's chronic back problems did not warrant an increase in her disability rating.
15. During the week of August 10, 1995, the plaintiff fell after her left leg gave away. She was seen at New Hanover Medical Center on August 17, 1995, following which Dr. Anderson recommended medication and that she begin using a cane.
15. On September 12, 1995, the plaintiff sought treatment by Dr. David Tomaszek, at which time she was found to have intractable back pain caused by a facet arthropathy. Thereafter, the plaintiff underwent an MRI, and a lumbar facet and epidural block. The injection relieved plaintiff's back pain until she sustained a fall in March of 1996.
16. The plaintiff experienced another fall in March of 1996, and at the time of the hearing, she continued under the care of Dr. Tomaszek.
17. Dr. Tomaszek has opined that the plaintiff's back condition has been the same since 1992, and that no additional disability rating is warranted.
******************
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff has failed to carry the burden of proof to establish that she has sustained a substantial change of condition which is causally related to the admittedly compensable injuries. N.C. GEN. STAT. § 97-47.
2. As a result of the admittedly compensable injuries, the plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred as may be required to provide relief, effect a cure or lessen her period of disability. N.C. GEN. STAT. § 97-2(19), Hyler v. GTE Products Company, 333 N.C. 258,425 S.E.2d 698 (1993).
******************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for additional benefits as a result of a change of condition is DENIED.
2. Defendants shall pay medical expenses incurred or to be incurred as a result of the admittedly compensable back injuries as may be required to provide relief, effect a cure or lessen plaintiff's period of disability (including treatment provided by Dr. Anderson since 1995 that defendant has refused to pay) when bills for same have been submitted and approved through procedures adopted by the Commission.
3. Defendants shall pay the costs, including the expert witness fees of $200.00 to Landon Anderson, M.D., and $180.00 to David E. Tomaszek, M.D.
 S/ __________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________________ LAURA K. MAVRETIC COMMISSIONER
S/ __________________________ EDWARD GARNER, JR. DEPUTY COMMISSIONER
BSB:md